# EXHIBIT 1

## DECLARATION

I, Rob Thun, do hereby declare and state under penalty of perjury as follows:

1. I am the Chief Content Officer of DIRECTV. As such, I am principally responsible for all strategy, investments, negotiations, and acquisitions for programming on DIRECTV's satellite, streaming, and U-verse platforms. My business address is 2260 E. Imperial Highway, El Segundo, CA 90245.

2. DIRECTV generally will pay more to a station group in retransmission consent fees to the extent they control two or more affiliates of the Big Four networks (ABC, NBC, CBS, and FOX) in one or more local markets, all other factors being equal. For purposes of this declaration, I refer to such combinations as "Big Four Duopolies," "Big Four Triopolies," and "Big Four Quadropolies," using the term "Big Four Duopolies" to refer to all such combinations for clarity.

3. For purposes of this declaration, when I refer to DIRECTV "paying more" in retransmission consent fees, I intend that phrase to also include accepting non-economic terms and conditions *other* than rates that are also generally less favorable than stations without Big Four Duopolies.

4. Further it stands to reason that the more Big Four Duopolies a station group controls, the more leverage that group has in negotiations with DIRECTV.

5. When DIRECTV prepares for negotiations with a station group, it collects a wide variety of data to help it set the higher bound of prices at which it will agree to pay a station group for its portfolio of stations. Among the key variables of data that DIRECTV considers in estimating the higher bound of prices, is the extent to which the station group possesses Big Four Duopolies and the amount of subscribers that such station group covers with such Big Four Duopolies.

6. It can be difficult to quantify the extent of this leverage because each negotiation and each counterparty is different. That said, I am confident that Big Four Duopolies is a significant factor in driving the amount of fees that DIRECTV pays for retransmission consent for those station groups that contain Big Four Duopolies in their respective portfolio of stations.

7. DIRECTV's agreements with station groups nearly always cover all of the station group's stations. Those agreements generally provide for a single price for all of a group's stations that fall within a particular category. Thus, for example, DIRECTV might pay $X per month per subscriber for stations (or multicast feeds) affiliated with the Big Four networks and pay $Y per month per subscriber for independent stations.

B-48

8.  DIRECTV negotiates these single fees, however, as a reflection of the parties' relative bargaining leverage *within the DMAs in which the station group operates*.

9.  DIRECTV views the price it is willing to pay for all of a station group's stations as a "weighted average" rate it is willing to pay for each of the group's individual stations and is not a reflection or acknowledgement that stations do not have different values across markets.  Such practice was adopted for ease in applying and reconciling monthly payments between the parties.


__December 17, 2025_____
Date

Rob Thun